UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| BERLINDA A. MADDEN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 1:15-cv-296 |
| v. | ) | |
| | ) | Judge Mattice |
| MEGAN J. BRENNAN, | ) | Magistrate Judge Lee |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the Motion for Summary Judgment (Doc. 93) filed by Defendant Megan J. Brennan as Postmaster General of the United States Postal Service ("Defendant") and former Defendants Darren Rzeplinski, Vic Condroski, Cindy Bingham, Linda Melton, Tamara Dehart, and Larry Hutchinson (the "Individual Defendants"). Since the filing of the motion, the Court has granted the Amended Motion to Dismiss (Doc. 38), dismissing all counts of Plaintiff Berlinda A. Madden's amended complaint as to the Individual Defendants, who are consequently no longer parties to this action. (Doc. 103 at 22). The Court also granted in part the Motion to Dismiss of Defendant Brennan (Doc. 47), dismissing Plaintiff's claims under 42 U.S.C. § 1983. (Doc. 103 at 22). The Court now considers whether Defendant is entitled to summary judgment on Plaintiff's remaining claims for failure to accommodate, hostile work environment, and retaliation under the Rehabilitation Act of 1973.

Also before the Court is Defendant's Motion to Strike Plaintiff's Reply on Motion to Deny Summary Judgment on the Issue of Rehabilitation Act (Doc. 106). Because the Court finds that the Motion for Summary Judgment should be granted irrespective of

Plaintiff's reply (Doc. 104), the Court does not reach the issues presented by the Motion to Strike.

For the reasons explained below, Defendant Brennan's Motion for Summary Judgment (Doc. 93) will be **GRANTED** and this action will be **DISMISSED WITH PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The record reflects that Plaintiff began her employment with the United States Postal Service in 2000. (Doc. 93-1 at 2). During the period relevant to the Amended Complaint, Plaintiff worked as a mail handler at the Processing and Distribution Center, or P&DC. (Doc. 34 at 2). While the duties of a mail handler vary, they include processing mail and loading and unloading trucks, and therefore mail handlers are generally expected to be able to lift up to seventy pounds. (Doc. 93-1 at 12). During her employment, the Plaintiff sustained injuries that were covered by the USPS workers compensation program. (Doc. 93-1 at 3, 12, 24). She initially reported suffering from carpal tunnel syndrome in 2002 or 2003. (Doc. 93-1 at 18). In 2009, Plaintiff's physical restrictions changed roughly every month or two as she had appointments with her physician. (Doc. 93-1 at 23-24). Because her restrictions changed frequently, her job title or duties would often change as well. (*Id.*)

In September 2009, Plaintiff made initial contact with an EEO counselor regarding claims that USPS discriminated against her. (Doc. 34 at 5). The disposition of this charge, Case No. 1H-3720016-09, is not clear from the record.[1]

---

[1] An EEO Dispute Resolution Specialist's Inquiry Report marked as Defendant's Exhibit 20 in Plaintiff's deposition suggests she filed a formal complaint related to the 2009 EEO charge on April 6, 2010. (Doc. 93-1, at 70).

In early December 2009, Plaintiff had surgery related to her carpal tunnel condition. (Doc. 93-1 at 8).[2] On December 20, 2009, she accepted an offer of modified assignment, which indicated that she was unable to perform tasks involving pushing, pulling, or lifting, that she could only sit for up to 7 hours, and that she could not use her right hand. (Doc. 93-1 at 33-34). Her modified assignment was for "limited duty standby," requiring her to sit in a room in the P&DC during her shift hours. (Doc. 93-1 at 33-35).

As discussed in more detail below, the core events that form the basis for Plaintiff's claims occurred between December 6, 2009, and January 20, 2010, during the 45-day period prior to her initial contact with the EEO counselor regarding this matter:

**December 19, 2009 to January 5, 2010**: Plaintiff was assigned to limited duty standby, requiring her to sit in a standby room during her shift. (Doc. 34 at 5).

**December 2009**: Plaintiff was "harassed" by supervisor Tamara Dehart about using a restroom she had previously been given permission to use during her shifts in the standby room. (Doc. 34 at 6; Doc. 93-1 at 60-61).

**December 26, 2009**: Plaintiff's non-scheduled days were changed. (Doc. 34 at 5).

**December 28, 2009**: Plaintiff requested leave to either go to a union meeting or file a grievance. (Doc. 34 at 6; Doc. 93-1 at 67-68). Supervisor Vic Condroski gave her a "hard time" about it and denied her request. (Doc. 34 at 6). During her deposition, she could not recall details of the interaction. (Doc. 93-1 at 67-68).

**January 5, 2010**: Unspecified management did not approve her leave request. (Doc. 34 at 6). Also on January 5, 2010, her work hours were changed. (*Id.*).

---

[2] The record is not clear on this point, but Plaintiff's surgery appears to have been on December 7, 2009. (Doc. 93-1 at 8, 42-43).

**January 8, 2010**: Plaintiff was written up as absent without leave ("AWOL") by supervisor Linda Melton. (Doc. 34 at 6). Supervisors Melton and Darren Rzeplinski were both responsible for the write-up according to the affidavit of J.R. Takacs, a former co-worker of Plaintiff. (Doc. 97 at 18-19). According to Mr. Takacs, Rzeplinski told him he would remove the "AWOL" if Plaintiff agreed to withdraw her EEO complaint. (*Id.*).

**January 11, 2010**. An unspecified person instructed Plaintiff to work outside of her physical restrictions. Plaintiff did so and it caused her to tear both right and left shoulders. (Doc. 34 at 6).

**January 19, 2010**. Supervisor Cindy Bingham told Plaintiff that she was not allowed to go on bathroom breaks and to "hold it." (Doc. 34 at 5).

**January 26, 2010**: Someone tried to force Plaintiff to sign unidentified papers by threatening, intimidating, screaming, and yelling at her. (Doc. 34 at 21).

**Winter 2009:** An assignment related to certain Netflix trays required lifting beyond the 10-pound restriction Plaintiff had at that time. (Doc. 93-1 at 14-15).

Plaintiff contacted an EEO counselor on January 20, 2010, relating to these and other events. (Doc. 47-2; Doc. 93-1 at 65). She filed a formal complaint in the matter, designated Case No. 1H-372-0008-10, on May 1, 2010. (Doc. 34 at 2; Doc. 47-1 at 8). Though a final agency decision does not appear in the record, it is apparently undisputed that one was issued in Case No. 1H-372-0008-10 and that the agency found no discrimination had occurred.

Plaintiff's claims before this Court rely on two additional events that occurred after she filed her formal agency complaint. (Doc. 47-1; Doc. 97 at 2). First, Plaintiff's former coworker Michael Houston allegedly had a conversation with a USPS supervisor on June 10, 2010, in which Plaintiff was referenced. (Doc. 34 at 6). The letter regarding this event

does not purport to be a declaration under penalty of perjury, *see* 28 U.S.C. § 1746(2), or a sworn statement. Plaintiff does not claim to have any personal knowledge of the conversation. In the absence of admissible evidence of the alleged June 10, 2010 conversation, the Court will not consider it. FRCP 56(c)(4).

Several years later, in June 2012, Plaintiff received a letter from USPS notifying her that there was no work for her nor would there be in the near future. (Doc. 34 at 6). Her employment with USPS ended on July 14, 2012. (Doc. 93-1 at 3). She began receiving income from the Office of Workers' Compensation Programs sometime thereafter. (Doc. 93-1 at 4).

Plaintiff timely filed this action on October 29, 2015, and amended her complaint (Doc. 34) on March 6, 2017. The amended complaint includes a certification under penalty of perjury that the allegations therein are true to the best of Plaintiff's information, knowledge, and belief. (Doc. 34 at 9-10). Defendant filed the instant Motion for Summary Judgment on January 30, 2018, (Doc. 93) and Plaintiff responded with Plaintiff's Verified Motion to Deny Summary Judgment (Doc. 97) on February 12, 2018.

In its March 8, 2018 Order, the Court dismissed all claims against the Individual Defendants and all Plaintiff's § 1983 claims. (Doc. 103). The Court also ruled that Plaintiff had failed to exhaust her administrative remedies with respect to any incidents of discrimination that occurred more than 45 days prior to her January 20, 2010 contact with the EEO counselor. (*Id.*); *see* 29 C.F.R. § 1614.105 (requiring aggrieved persons who believe they have been discriminated against to "initiate contact with a Counselor within 45 days of the matter alleged to be discriminatory"). Accordingly, in evaluating Defendant's Motion for Summary Judgment, the Court will consider allegations of discrimination that occurred between December 6, 2009, and January 20, 2010, as well

as any incidents that could be reasonably expected to grow out of the charge of discrimination. *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) ("[T]he general rule in this circuit... [is] that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.") (quoting *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367 (6th Cir. 2002)).

Defendant does not dispute the events described in Plaintiff's amended complaint, but argues that the admissible evidence before the Court demonstrates an absence of genuine issues of material fact and that Defendant is therefore entitled to judgment as a matter of law. With the exception of a single affidavit, Plaintiff's submissions in opposition to the motion do not refer the Court to specific evidence to support her claims, instead repeating the allegations of the verified Amended Complaint nearly verbatim. However, a verified complaint carries the same weight as would an affidavit for the purposes of summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). The Court will treat the Amended Complaint as affidavit evidence to the extent that it is made on personal knowledge, sets out facts that would be admissible in evidence, and shows that the Plaintiff is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that

an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists*. Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential

element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, is the exclusive remedy for a federal employee alleging disability-based discrimination. *Plautz v. Potter*, 156 F. App'x 812, 815 (6th Cir. 2005). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.... " 29 U.S.C. § 794(a). Plaintiff asserts claims against Defendant for failure to accommodate, hostile work environment, and retaliation under the Rehabilitation Act.

### A. Rehabilitation Act – Failure to Accommodate

In order to establish a *prima facie* case of disability discrimination based on an employer's failure to accommodate, a plaintiff must show the following: (1) she is an individual with a disability under the Act, (2) she is otherwise qualified for the position, (3) the agency was aware of her disability, (4) an accommodation was needed, i.e., a causal relationship existed between the disability and the request for accommodation, and (5) the agency failed to provide the necessary accommodation. *Gaines v. Runyon*, 107 F.3d 1171, 1175–76 (6th Cir. 1997). If the employee establishes a *prima facie* case, the burden shifts to the employer to show that the employee could not be reasonably accommodated without imposing an undue hardship on the operation of its programs. *Id.*

Here, Defendant contends that Plaintiff has not met her burden because USPS accommodated her by modifying her duties until her physical restrictions increased to the

point that there was no work for her to do. (Doc. 93 at 2).[3] Plaintiff's response recites the allegations of her Amended Complaint, relying solely on incidents that occurred prior to December 6, 2009, and which are therefore not properly before the Court. (Doc. 34 at 6-7; D0c. 97 at 6-7). However, because the Defendant has the burden of showing that there is insufficient evidence to create a genuine issue of material fact for trial, the Court reviews the evidence submitted by Defendant and construes it in the light most favorable to the Plaintiff. *See Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870-71 (6th Cir. 2015) ("[E]ven where a motion for summary judgment is unopposed (in whole or in part), a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists.").

Plaintiff asserts that she requested accommodations from USPS by providing her supervisors with duty status reports from her physicians, which outlined her physical restrictions. (Doc. 93-1 at 41-42). She testified that she provided these restrictions after her surgery in December 2009. (Doc. 93-1 at 8). The record does not indicate when she returned to work, but on December 20, 2009, she accepted an offer of modified assignment for limited duty standby. (Doc. 93-1 at 34). The offer reflected that her physical restrictions at the time included "no pushing, pulling, or lifting," no use of her right hand, and that she could only sit for 7 hours. (*Id.*). Plaintiff does not contend that her request for accommodation was denied or that the limited duty standby assignment was outside of her physical restrictions. Rather, she contends that by placing her on limited duty standby instead of giving her other work to do, USPS failed to accommodate her. (Doc. 93-1 at 43-44).

---

[3] It appears to be uncontested that Plaintiff is an individual with a disability within the meaning of the Act. (Doc. 94 at 7).

The Rehabilitation Act imposes a duty on employers to "provide reasonable accommodations that make it possible for the disabled employee to perform the essential functions of [her] job." *Gaines v. Runyon*, 107 F.3d at 1178. However, "[t]he employer need not provide the accommodation that the employee requests or prefers." *Trepka v. Board of Educ.*, 28 F. App'x 455, 459-60 (6th Cir. 2002) (finding no issue of material fact as to reasonable accommodation claim under the Rehabilitation Act). If different reasonable accommodation is provided, "an employee is not entitled to a particular reasonable accommodation." *Id.* Therefore, to avoid summary judgment, "[Plaintiff] must demonstrate a genuine issue of material fact with regard not only to her entitlement to her requested accommodation, but also to the inadequacy of the offered alternatives." *Id.* at 460. Plaintiff has not pointed to any evidence that her limited duty standby assignment was inadequate to accommodate the physical restrictions arising from her disability.

Two other incidents could conceivably relate to Plaintiff's failure to accommodate claim, but neither includes sufficient detail to satisfy Plaintiff's *prima facie* burden. First, Plaintiff's Amended Complaint states that she was instructed to work outside of her restrictions on January 11, 2010, and that she suffered injury as a result. She did not testify regarding this incident. Second, Plaintiff testified in her deposition that there was a Netflix-related job assignment that involved lifting over 10 pounds, which she could not do. Neither instance shows that Plaintiff made a request for specific accommodation, that the requested accommodation was causally related to her disability, or that USPS failed to accommodate her.

The Court has carefully reviewed the submissions of Defendant and Plaintiff in connection with this motion and finds that there is not sufficient evidence to show that Plaintiff requested an accommodation related to her disability that USPS failed to

provide. On the contrary, the evidence indicates that Plaintiff requested accommodation after her surgery in December 2009 and was provided an assignment within her physical abilities. Because Plaintiff has not met her *prima facie* burden, Defendant is entitled to summary judgment as to Count 1 of Plaintiff's Amended Complaint for failure to accommodate under the Rehabilitation Act.

### B. Rehabilitation Act – Hostile Work Environment

To prevail on a hostile work environment claim under the Rehabilitation Act, plaintiff must establish five elements: (1) she was disabled, (2) she was subject to unwelcome harassment, (3) the harassment was based on her disability, (4) the harassment unreasonably interfered with her work performance, and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures. *Plautz v. Potter*, 156 F. App'x at 818 ("We borrow the standard for a hostile work environment claim under the Rehabilitation Act from the ADA."). A plaintiff has suffered from a hostile work environment when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal punctuation and citation omitted). "Conduct that is 'merely offensive' will not suffice to support a hostile work environment action." *Trepka v. Board of Educ.*, 28 F. App'x at 461 (quoting *Harris*, 510 U.S. at 21).

Defendant argues that even if all of Plaintiff's allegations are true, they do not support a finding of harassment, much less harassment based on Plaintiff's disability.

(Doc. 93 at 2).[4] Plaintiff did not substantively respond to Defendant's argument in this regard, again reciting the allegations of her Amended Complaint. (Doc. 97 at 8). Her claims find no further support in her attached documentation, which consists of an unsworn statement from a third party and the declaration of Mr. Takacs. The affidavit of Mr. Takacs addresses one incident during the relevant period—a conversation for which Plaintiff was not present and which does not appear to have included any hostile, intimidating, or threatening comments. (Doc. 97 at 18).

Turning to the verified allegations of Plaintiff's Amended Complaint and viewing the evidence in the light most favorable to her, the Court notes the following incidents that occurred between December 6, 2009, and January 10, 2010, that Plaintiff could potentially have viewed as harassing or hostile:

**December 2009**: Plaintiff was "harassed" by supervisor Dehart about using a restroom she had previously been given permission to use during her shifts in the standby room. (Doc. 34 at 6). Plaintiff testified in her deposition that supervisor Melton gave her permission to use the restroom in question, that supervisor Dehart saw her leave the restroom and that Dehart and then Melton subsequently instructed her not to use it. (Doc. 931-1 at 60-62). These interactions were discriminatory in her view because the other bathrooms in the building were further away. (*Id.* at 61). Plaintiff does not claim that the tone, volume, or substance of these interactions were humiliating or offensive. Plaintiff does not claim that walking further to the restroom imposed any hardship on her or aggravated her injuries.

---

[4] Defendant also argues that Plaintiff's hostile work environment claim is procedurally barred due to failure to exhaust administrative remedies. (Doc. 93 at 2). This argument was considered and rejected in the Court's March 3, 2018 Order. (Doc. 103 at 18-19).

**December 28, 2009**: Plaintiff requested leave to go to a union meeting and supervisor Vic Condroski gave her a "hard time" about it and denied her request. (Doc. 34 at 5). She could not recall the details of the request, only that it was denied. (Doc. 67-68) She testified that she "did not file an EEO or grievance against it so I'm not going to worry about it." (Doc. 93-1 at 68).

**January 19, 2010**: Supervisor Cindy Bingham told Plaintiff that she was not allowed to go on bathroom breaks and to "hold it." (Doc. 34 at 5).

**January 26, 2010**: After she contacted an EEO counselor, an unspecified person "tried to force [her] to sign [a] forged paper by threatening, intimidated screaming and yelling." (Doc. 34 at 5). Plaintiff does not allege that this incident took place at work, that any employees of USPS were present, or that the dispute related to her disability. No further evidence regarding the incident appears in the record and Plaintiff apparently did not offer any testimony about it (Doc. 94 at 16), despite being explicitly asked if there were "[a]ny other ways in which [she was] subjected to a hostile work environment." (Doc. 93-1 at page 53).

While the Court must draw all inferences in favor of the nonmoving party, it is not required to fill in gaps in the factual record in order to discharge this duty. The admissible evidence before the Court suggests that Plaintiff experienced a string of incidents in her workplace ranging from annoyances to rude comments. Taken together, these events cannot be reasonably construed as creating an environment "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. at 21. "There is no evidence that [Plaintiff] was ridiculed or insulted because of [her] medical condition to the point that it permeated [her] work environment." *Plautz v. Potter*, 156 F. App'x at 819. Indeed, there is no indication that Plaintiff was ridiculed at all, or that any

reference was made to her disability by her supervisors or coworkers. *See Trepka v. Board of Educ.*, 28 F. App'x at 461 (finding that a single reference to plaintiff's disability was insufficiently severe to constitute harassment). No reasonable trier of fact could find that Plaintiff suffered from a hostile work environment and accordingly, Defendant is entitled to summary judgment as to Plaintiff's claims of harassment and hostile work environment under the Rehabilitation Act set out in Counts 2 and 4 of the amended complaint.

### C. Rehabilitation Act – Retaliation

A *prima facie* case of retaliation under the Rehabilitation Act requires Plaintiff to establish four elements: (1) plaintiff engaged in protected activity, (2) defendant knew about the protected activity, (3) defendant subsequently took an adverse employment action, and (4) a causal connection existed between the protected activity and the adverse employment action or harassment. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (applying burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to retaliation claim under the Rehabilitation Act). Once plaintiff has made out a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant carries that burden, the plaintiff then has an opportunity to show that the reasons offered by the defendant are mere pretext for discrimination. *Id.*

Here, Plaintiff contends her "trouble started" when she filed an EEO charge in September 2009. (Doc. 34 at 5). The Court infers that this protected activity is the basis for Plaintiff's retaliation claim, satisfying the first element. With respect to the second element, it is not clear which of Plaintiff's supervisors were aware of her September EEO charge, but supervisors Melton and Rzeplinski became aware of it sometime prior to January 8, 2010. (Doc. 97 at 18-19).

Next, Plaintiff must show she was the recipient of an adverse employment action, which means "a materially adverse change in the terms or conditions of employment because of the employer's conduct." *Plautz v. Potter*, 156 F. App'x at 817 (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (punctuation omitted). "[A] 'materially adverse' change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Mitchell*, 389 F.3d at 182 (quoting *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 886 (6th Cir. 1996)).

In opposition to the motion for summary judgment, Plaintiff submits the declaration of J.R. Takacs, a former coworker of Plaintiff and union representative. In pertinent part, the declaration indicates that supervisors Melton and Rzeplinski told Mr. Takacs that they would remove Plaintiff's AWOL write-up if Plaintiff withdrew her EEO complaint. (Doc. 97 at 19). Plaintiff's Amended Complaint states that she was written up as absent without leave on January 8, 2010. (Doc. 34 at 6). She does not claim to have been at work or on authorized leave on January 8, 2010.

An adverse employment action must be "materially adverse," meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal punctuation and citation omitted) (discussing adverse employment action in the context of Title VII action). The focus of an adverse employment action inquiry is thus forward-looking: would the AWOL write-up have deterred a reasonable employee from further protected activity? If not, a later *quid pro quo* offer to remove the write-up does not retroactively convert it into an adverse employment action. Because Plaintiff has failed to claim that the absent without leave write-up was actually in error or harmed her in any way, the Court cannot conclude that it constitutes an adverse employment action.

*See id.* at 67 (holding that the "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm").

In the absence of additional evidence from the Plaintiff, the Court turns to any events described in her verified complaint and deposition testimony that could be construed as an adverse employment action. Plaintiff states that she was put on limited duty standby, her nonscheduled days changed, her work hours changed, a leave request was not approved, and she was denied leave time, to either go to a union meeting or file a grievance. (Doc. 34 at 5-6). First, Plaintiff explicitly testified that her job duties changed many times throughout 2009 because of her changing physical restrictions and injuries. (Doc. 93-1 at 23-24). Plaintiff says she went to the doctor every 1-2 months, received new restrictions, turned those in, and "each time" her job title or duties would change. (*Id.*) She also testified that certain limited duty assignments at the P&DC were done at certain times of the day or night. (Doc. 93-1 at 15). She does not claim that her schedule changes harmed or injured her. Even viewed in Madden's favor, her leave and scheduling issues cannot be construed as anything more than "the ordinary tribulations of the workplace." *Burlington*, 548 U.S. at 68 (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Lynch v. U.S. Postal Serv.*, 3 F. App'x 287, 289 (6th. Cir. 2001) (finding no material change to the terms of plaintiff's employment where she was denied leave she had not earned, charged for being late to work, and experienced delays in submitting a worker's compensation claim).

Plaintiff's separation from USPS on July 14, 2012 – nearly three years after her September 2009 protected activity – is clearly an adverse employment action. Just as clearly, it is too far removed in time from the protected activity to support the finding of causation that is required for a *prima facie* case of retaliation. Without other evidence of

causation, Plaintiff's termination nearly three years after she filed her EEO charge is insufficiently temporally proximate to establish causation. *See Mulvey v. Hugler*, Case No. 17-5633, 2018 WL 2771246 at *4 (6th Cir. April 3, 2018) (ruling that a gap of a year between protected activity and adverse employment action "[did] not establish sufficient temporal proximity to support a finding of causation"); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (in the absence of additional evidence, "loose temporal proximity" of several months between protected activity and adverse employment action was "insufficient to create a triable issue").

Because Plaintiff has failed to establish the essential elements of a *prima facie* case for retaliation under the Rehabilitation Act, the burden does not shift to Defendant to provide a nondiscriminatory explanation of its actions and Defendant is entitled to judgment as a matter of law.

### IV. CONCLUSION

For the reasons set forth herein, the Court hereby **ORDERS** as follows:

1.  The Motion for Summary Judgment (Doc. 93) filed by Defendant Megan J. Brennan is **GRANTED;**

2.  This action is hereby **DISMISSED** with prejudice; and

3.  A separate judgment shall enter.

**SO ORDERED** this 5th day of September 2018.


*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE